UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

V.                                                         CRIMINAL NO. 3:17-CR-140-DPJ-FKB

DAVID CALVIN BEARD

ORDER

Defendant David Calvin Beard seeks a sentence modification under 18 U.S.C. § 3582(c)(1)(A).  Mot. [105].  For the following reasons, Beard's motion is denied.

I.      Facts and Procedural History

On November 28, 2017, the federal grand jury indicted Beard for being a felon in possession of a firearm.  Beard pleaded guilty on January 11, 2018, and on July 3, 2018, the Court sentenced Beard to a below-guidelines 51-month term of incarceration, to run consecutively to the term of imprisonment Beard was then serving in the custody of the State of Mississippi.

Beard, a 57-year-old man with diabetes and a history of cancer and radiation treatment, began serving his federal sentence on August 6, 2019.  He is currently housed at the medium-security federal correctional facility in Forrest City, Arkansas (FCI Forrest City Medium).  As of May 3, 2021, one inmate at FCI Forrest City Medium has an active case of COVID-19.  To date, 353 inmates and 62 staff members there—including Beard—have had and recovered from the virus, and two inmates have died due to COVID-19.

Beard says when he was previously infected with COVID-19, he "was hospitalized . . . and put on a breathing machine barely recovering while leaving him with effects that have not entirely vanished."  Mot. [105] at 2.  He claims he "is highly likely to contract [COVID-19]

again" and fears he could face significant complications if he does, given his age and underlying health conditions. *Id.* So he asks the Court to modify his sentence and order his release. According to the Bureau of Prisons (BOP) website, Beard's projected release date is March 21, 2023.

II.     Analysis

Compassionate-release motions arise under 18 U.S.C. § 3582(c)(1)(A)(i), which provides:

> The court may not modify a term of imprisonment once it has been imposed except that . . . the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

The parties first dispute whether Beard satisfied the statute's exhaustion requirements. There's no question that on February 4, 2021, Beard submitted a request asking the warden "to file a 3582 compassionate release motion on [his] behalf." Request [105-1]. It appears that the request was immediately rejected, so on March 17, 2021—more than 30 days after his request to the warden—Beard filed his own compassionate-release motion in this Court. The Government now argues that he was first required to fully exhaust the administrative appeal process. *See* Gov't's Resp. [109] at 5.[1]

---

[1] Although the Government opposes Beard's exhaustion argument in this case, it has agreed with his construction in others. *See, e.g., United States v. Mason*, No. 3:14-CR-114-DPJ-FKB, Gov't's Resp. [380] at 10 n.3 (conceding exhaustion and noting that "an inmate need not

The exhaustion requirement of § 3582(c)(1)(A) has been inconsistently construed. Some courts agree with the Government's construction in this case whereas others hold that a prisoner may file a motion 30 days after making a request to the warden, even if the warden acts within that time—i.e., there is no need to exhaust BOP's appellate process. *See United States v. Martin*, No. 3:16-CR-70-DPJ-LRA, 2020 WL 3065302, at *3 (S.D. Miss. June 9, 2020) (comparing constructions) (citing *United States v. Ng Lap Seng*, No. 15-CR-706-VSB, 2020 WL 2301202, at *5 (S.D.N.Y. May 8, 2020) (collecting cases)).

Absent binding authority, this Court previously joined those requiring full administrative exhaustion once the warden denies the request. *See Martin*, 2020 WL 3065302, at *3. That holding has been cited in over 30 cases and has been followed by other judges in this district. Unfortunately, the Fifth Circuit has not had an opportunity to determine whether *Martin* was correctly decided, so the issue remains open in this circuit. Revisiting that analysis now would only cause confusion, and there is no need to undertake that task because Beard's motion otherwise fails on the merits. *See United States v. Jefferson*, 831 F. App'x 685, 686 (5th Cir. 2020) (noting that exhaustion is not jurisdictional and avoiding exhaustion issue because "the case [was] easily resolved on the merits").

Turning to the merits, the Court must decide whether, "considering the factors set forth in [§] 3553(a)," "extraordinary and compelling reasons warrant" a reduction in Beard's sentence, "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). And that raises the question whether there is presently an applicable policy statement. Although Congress incorporated the guidelines, "[t]he Sentencing Commission has

---

'exhaust' administrative remedies if the motion is filed in court 30 days after receipt of a request by the warden").

not issued a relevant policy statement since 18 U.S.C. § 3582(c)(1)(A) was amended to permit defendants to file motions for compassionate release" on their own behalves. *United States v. Woods*, No. 1:17-CR-118-LG-JCG, 2020 WL 3452984, at *2 (S.D. Miss. June 24, 2020).

Looking to the previously applicable policy statements, United States Sentencing Guidelines § 1B1.13 "essentially reiterates the requirements of § 3582(c)(1)(A), with the additional requirement that a defendant 'not be a danger to the safety of any other person or to the community.'" *United States v. Dunlap*, No. 1:02-CR-165, 2020 WL 2062311, at *1 (M.D.N.C. Apr. 29, 2020) (quoting U.S.S.G. § 1B1.13(2)). The application notes to § 1B1.13 provide examples of extraordinary and compelling reasons to grant a compassionate release. Application Note 1 states:

> Provided the defendant [is not a danger to the safety of any other person or to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant --
>
>   (i) The defendant is suffering from a terminal illness[.]
>
>   (ii) The defendant is [suffering from a health condition] that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant -- The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances --
>
>   (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
>   (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

>  (D)  Other reasons -- As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13, Application Note 1.

Many courts have looked to § 1B1.13 as the applicable policy statement, but in *United States v. Shkambi*, the Fifth Circuit rejected that position as to compassionate-release motions filed by prisoners and concluded that there presently is no applicable policy statement.  993 F.3d 388 (5th Cir. 2021).  As such, "neither [§ 1B1.13] nor the commentary to it binds a district court addressing a prisoner's own motion under § 3582."  *Id.* at 393.

But holding that § 1B1.13 is not "binding" does not render it irrelevant.  Earlier panels from the Fifth Circuit have held that "[a]lthough not dispositive, the commentary to the United States Sentencing Guidelines . . . § 1B1.13 informs our analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."  *United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) (citing *United States v. Rivas*, No. 20-10360, 2020 WL 6437288, at *2 (5th Cir. Nov. 2, 2020).  As a result, several district courts have continued to follow *Thompson* and *Rivas* while noting that § 1B1.13 is not binding after *Shkambi*.  *See, e.g.*, *United States v. May*, No. 4:18-CR-199(2), 2021 WL 1572655, at *3 (E.D. Tex. Apr. 20, 2021).[2]

Beard does not suggest that his underlying medical conditions, separately or taken together, fit within Application Notes 1(A), 1(B), or 1(C).  Instead, he argues that "the fact of the COVID-19 outbreak combined with his heightened personal risk factors constitute the type of 'extraordinary and compelling' reasons necessary to justify his transfer to home confinement."  Def.'s Reply [111] at 2.  And he says that "a review and weighing of" the factors the Attorney

---

[2] Under the rule of orderliness, "a later panel of this court cannot overrule an earlier panel decision."  *United States v. Berry*, 951 F.3d 632, 636 (5th Cir. 2020) (quoting *Hill v. Carroll Cnty.*, 587 F.3d 230, 237 (5th Cir. 2009)).

General listed in a March 2020 memorandum as things the BOP should consider in assessing whether to release inmates to home confinement due to the pandemic "supports his request for relief." *Id.* at 3; *see* Mar. 26, 2020 Attorney General Memo., available at justice.gov/file/1262731/download.

Starting with the Attorney General memorandum, it provided a "non-exhaustive list of discretionary factors" for BOP to consider when determining whether "to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic." Mar. 26, 2020 Attorney General Memo. at 1.  But BOP chose not to release Beard, and those factors are not binding on this Court.  *See Shkambi*, 2021 WL 1291609, at *4 (explaining that district court "is bound only by § 3582(c)(1)(A)(i) and, as always, the sentencing factors in § 3553(a)" in considering a motion for sentence modification).

Regardless, the Court finds Beard has not shown extraordinary and compelling reasons warranting a sentence reduction.  As noted, there is presently only one active case of COVID-19 at FCI Forrest City Medium, and at the last report, 1,351 of the campus's 2,710 inmates had been fully vaccinated.  *See* COVID-19 Coronavirus, bop.gov/coronavirus/ (last accessed May 3, 2021).  Plus, Beard has already had the disease.  While the Court does not discount Beard's subjective concerns, the CDC's current guidance provides that "[c]ases of reinfection with COVID-19 have been reported, but remain rare."  Centers for Disease Control, Reinfection with COVID-19, available at https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (last updated Oct. 27, 2020).

Assuming Beard was among the rare individuals who suffer reinfection, the CDC has indicated that adults with diabetes "**can [be] more likely** to get severely ill from COVID-19." Centers for Disease Control, COVID-19, People at Increased Risk, People with Certain Medical

Conditions, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last updated Mar. 29, 2021) (emphasis in original). Similarly, "having a history of cancer may increase [an adult's] risk" of getting "severely ill from COVID-19." *Id.* Finally, "[o]lder adults are more likely to get severely ill from COVID-19," with "[m]ore than 80% of COVID-19 deaths occur[ring] in people over age 65, and more than 95% of COVID-19 deaths occur[ring] in people older than 45." *Id.*

Balancing the low risk of reinfection and the ongoing vaccinations within BOP against Beard's potential increased risk for severe illness were he to contract COVID-19 again, the Court finds that Beard has not presented an extraordinary and compelling reason to grant release. Even if he did, some courts have rejected the argument that a potential increased risk will alone justify a sentence modification. *See United States v. Chambers*, No. 18-47, 2020 WL 4260445, at *4 (E.D. La. July 24, 2020) (collecting cases). This Court does not fully adopt that approach, but Beard's circumstances are not extraordinary and compelling.

Moreover, the § 3553(a) factors do not support a sentence modification. Those factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and

      (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentences and the sentencing range established for—

      (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[;]

. . . .

(5) any pertinent policy statement . . . [;]

. . . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

With a projected release date in March 2023, Beard has served less than half of the below-guidelines sentence the Court originally considered appropriate under the § 3553(a) factors. And the application of those factors has not changed. First, the Court must consider the nature and circumstances of the offenses and the history and characteristics of the defendant. When he was convicted, Beard was in criminal-history category IV. *See* PSR [75] ¶ 55. As the Government details in its response, Beard

> has a lengthy criminal history including domestic violence (age 53)[,] home invasion (age 52), trespass (age 47), domestic violence (age 47), conspiracy to possess with intent to distribute methamphetamine (age 35), passing a bad check (x3) (age 35), driving while under the influence (age 34), assault (age 32), driving while under the influence (age 30), driving while under the influence (age 28), leaving the scene of an accident (age 24), petty larceny and trespassing (age 22), and burglary (age 20).

Gov't's Resp. [109] at 12 (citing PSR [75] ¶¶ 39–54). Beard's history and characteristics still justify the sentence imposed in 2018, and none of the other § 3553(a) factors demonstrate that a modification to his sentence is warranted. Stated simply, the original sentence was a just

8

punishment and was required to promote respect for the law while providing deterrence. Those factors have not changed. Beard has not shown that he is entitled to compassionate release.

III. Conclusion

The Court has considered all arguments. Those not addressed would not have changed the outcome. For the foregoing reasons, Beard's Motion for Compassionate Release [105] is denied.

**SO ORDERED AND ADJUDGED** this the 3rd day of May, 2021.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE